IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John William Pletcher, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No.  2:19-887 |
| Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) ) |
| AMBROSE, Senior District Judge | ) |

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment.  [ECF Nos. 11, 13]. Both parties have filed Briefs in Support of their Motions, and Plaintiff has filed a Reply Brief. [ECF Nos. 12, 14, 17]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). On or about March 22, 2016, Plaintiff applied for DIB. [ECF No. 8-7 (Ex. 1D)]. In his application, he alleged that since December 21, 2015, he has been disabled due to congestive heart failure and high blood pressure. [ECF No. 8-8 (Ex. 2E)].

1

His date last insured is December 31, 2021. [ECF No. 8-2 at 23].[1] The state agency denied his claims initially, and he requested an administrative hearing. Administrative Law Judge ("ALJ") Regina Carpenter held a hearing on May 4, 2018, at which Plaintiff was represented by counsel. [ECF No. 8-3, at 35-80. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 74-78. In a decision dated August 1, 2018, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 8-2, at 20-29]. Plaintiff requested review of the ALJ's determination by the Appeals Council, but the Appeals Council denied Plaintiff's request for review. Id. at 1-6. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 11, 13]. The issues are now ripe for my review.

## II.  LEGAL ANALYSIS

### A.  STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Regardless of "the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019). Substantial evidence has been defined as "more than a mere scintilla." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It means – and means only – such relevant evidence as a reasonable mind might accept as

---

[1] To receive DIB, Plaintiff must establish that he became disabled prior to December 31, 2021, the date on which his insured status expires, or "date last insured." 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a).

adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §

404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.   WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT DID NOT EQUAL A LISTING IN APPENDIX I, SUBPART P, REGULATION 4, SPECIFICALLY LISTING 4.02**

Plaintiff's sole argument on appeal is that the ALJ erred in failing to consider whether his congestive heart failure medically equaled the criteria of Listing 4.02 at step three of the analysis. [ECF Nos. 12, 17]. After careful consideration, I disagree.

At step two of the analysis, the ALJ found that Plaintiff had severe impairments, including non-ischemic cardiomyopathy; congestive heart failure; ventricular tachycardia with defibrillator; coronary artery disease, and obesity. [ECF No. 8-2, at 23]. She then found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 23-24. In particular, the ALJ found that Plaintiff's cardiovascular impairments failed to meet or medically equal *any* of the Listings under section 4.00, including 4.04 and 4.05. Id. She also found that the signs, symptoms, and laboratory findings of Plaintiff's obesity were not of such severity as found in any Listing. Id. at 24. The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567 except with no overhead reaching; no more than occasional pushing or pulling; no climbing or crawling; no more than occasional crouching; and no concentrated exposure to extreme heat and cold, vibration, respiratory irritants,

or hazards such as dangerous moving machinery or unprotected heights. [ECF No. 8-2, at 24-27]. The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that Plaintiff could perform, and, therefore, Plaintiff was not disabled. Id. at 28-29.

At step three, the ALJ expressly stated that she evaluated Plaintiff's non-ischemic cardiomyopathy, *congestive heart failure*, ventricular tachycardia with defibrillator, and coronary artery disease under Section 4.00 of appendix 1, and that, as fully discussed in the remainder of her opinion, the medical evidence of record did not demonstrate a level of severity "consistent with *any* requirements set forth *in section 4.00*." [ECF No. 8-2, at 23 (emphasis added)]. The ALJ additionally noted that she paid particular attention to section 4.04 (ischemic heart disease) and section 4.05 (recurrent arrhythmias). Id. Although Plaintiff does not dispute this synopsis of the ALJ's step three analysis, he contends that her failure to evaluate specifically whether his congestive heart failure equaled Listing 4.02 requires remand. [ECF No. 12].

The applicable version of Listing 4.02 – Chronic heart failure – provides, in pertinent part:

> **4.02 Chronic heart failure** while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in *both A and B* are satisfied.
>
> **A.** Medically documented presence of one of the following:
>
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure);
>
> . . .
>
> AND
>
> **B.** Resulting in one of the following:

> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c);
> . . . .

20 C.F.R. pt. 404, subpt. P, app.1 § 4.02.

Although the parties do not dispute that Plaintiff has a left ventricular ejection fraction of less than 30 percent (meeting the requirements of Part A of the Listing), Plaintiff concedes that he did not have three or more separate episodes of acute congestive heart failure within a consecutive 12-month period requiring acute extended physician intervention and that he does not otherwise meet Part B of the Listing. [ECF No. 12, at 8-10]. Plaintiff argues, however, that the ALJ erred by not evaluating whether his congestive heart failure medically **equals** the Listing. Id.

An impairment medically equals a listed impairment if "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The Commission can find medical equivalence in several ways:

> (1)(i) If you have an impairment that is described in appendix 1, but—
> (A) You do not exhibit one or more of the findings specified in the particular listing, or
> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
>
> (2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to

> those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing. . . .

20 C.F.R. § 404.1526(b); see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (for a claimant to qualify for benefits by showing that an unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the most similar listed impairment).

Plaintiff argues that the ALJ's failure to explain whether Plaintiff's congestive heart failure equaled Listing 4.02 during her step three analysis runs afoul of the Court of Appeals for the Third Circuit's decision in Burnett v. Commissioner of Social Security, 220 F.3d 112 (3d Cir. 2000). I disagree. Although the Burnett Court held that an ALJ's bare conclusory statement that an impairment did not match, or was not equivalent to, a listed impairment was insufficient, 220 F.3d at 119-20, subsequent Court of Appeals decisions have clarified that the ALJ's failure to cite a specific Listing at step three is not fatal provided that the ALJ's review of the record permits meaningful review of the step-three conclusion. See Jones v. Barnhart, 364 F.3d 501, 503-05 (3d Cir. 2004); Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 121-22 (3d Cir. 2008); Fullen v. Comm'r of Soc. Sec., 705 F. App'x 121, 123-24 (3d Cir. 2017). As the Court of Appeals explained under similar circumstances in Jones:

> Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review. In this case, the ALJ's decision, *read as a whole*, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements for any listing, including Listing 3.02(A).

364 F.3d at 504-05 (emphasis added) (citations omitted); see also Lopez, 270 F. App'x at 122 ("[A]lthough a discussion of the specific applicable Listings certainly would have been helpful, our primary concern always has been our ability to conduct meaningful judicial review."); Fullen, 705

F. App'x at 123-24 ("While the ALJ does not discuss Listing 8.06 specifically, he does state that he 'appropriately evaluated medical and other evidence pertaining to the claimant's medically determinable impairments in conjunction with all relevant severity criteria contained within the . . . 8.00 Skin Disorders . . . series of listed impairments.' This statement is supported by the ALJ's analysis at step four.").

After careful consideration, I find that the ALJ's opinion, viewed as a whole, permits meaningful review. First, as in Fullen, although the ALJ did not expressly address Listing 4.02 in her step three analysis, she stated that Plaintiff did not have an impairment that met or medically equaled any of the impairments listed in Appendix 1, including Listing 4.00 – Cardiovascular Disorders. [ECF No. 8-2, at 23-24]. Specifically, the ALJ explained that, "[a]s fully discussed below, the evidence of record does not demonstrate a level of severity consistent with any requirements set forth in Section 4.00 of Appendix 1." Id. at 23. The ALJ's use of the phrase "as fully discussed below" indicates that the subsequent sections of her opinion contain a more specific analysis of the evidence relevant to this issue. Consistent with this representation, the ALJ discussed the medical records and other record evidence regarding Plaintiff's congestive heart failure and concomitant limitations later in her opinion. In fact, Plaintiff admits that the ALJ discussed (and accepted) some of the Listing criteria, including Plaintiff's undisputed listing-level left ventricular ejection fraction between 20 and 30 percent. Id. at 25 (citing Exs. 3F, 5F, 6F, 9F, 15F, 21F, 22F, 24F). The ALJ also gave significant weight to the New York Heart Association ("NYHA") class II and III designations related to his congestive heart failure made by his cardiologist. Id. at 26 (citing Exs. 12F, 13F, 15F, 23F, 25F). Indeed, while the ALJ acknowledged that Plaintiff was classified variously at both NYHA classes II and III, she credited the more severe level III limitations, described as "[m]arked limitations of physical activity. Comfortable at rest.

Less than ordinary activity causes fatigue, palpitation, or dyspnea." Id.[2]

Among the other evidence cited and credited by the ALJ are the records from Plaintiff's treating physician, Dr. Miske, who opined on multiple occasions that Plaintiff could perform light or sedentary work; records from treating cardiologist, Dr. Tauberg, whose opined restrictions were compatible with sedentary work; and the report of state agency physician, Dr. Guie, who also opined that Plaintiff had an RFC consistent with sedentary work. See id. at 24-27 (citing, inter alia, Exs. 1A, 6F, 10F, 12F, 13F, 14F, 16F, 17F, 23F, 25F). In addition, the ALJ cited Plaintiff's self-described daily activities – such as walking briskly on a treadmill daily, and acting as a single father to three children, including a disabled child – as evidence that Plaintiff was not limited to the extent claimed. See id. (citing Exs. 4F, 5F, 6F, 13F, 19F, 25F, and Testimony). Because the ALJ analyzed the probative evidence relevant to Listing 4.02 elsewhere in her opinion and explained her findings sufficiently to permit meaningful judicial review of the step-three analysis, substantial evidence supports the ALJ's step three conclusions.

Plaintiff's arguments in support of remand consist primarily of citation to medical records in an effort to demonstrate that Plaintiff's congestive heart failure equaled Part B of Listing 4.02 and that the ALJ failed to consider the same. In particular, although Plaintiff agrees that the evidence does *not* demonstrate three separate episodes of congestive heart failure as contemplated by 4.02B(2), he contends that his need for "constant intervention" in the form of a LifeVest (external defibrillator) followed by implantation of an internal defibrillator ("AICD") "more

---

[2] According to the American Heart Association, the NYHA Functional Classification is the most commonly used classification system for heart failure. It places patients in one of four categories based on how much they are limited during physical activity. Class II is defined as "slight limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath)." Class III is defined as "marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, or dyspnea." https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure.

than fairly raises the issue" of whether his congestive heart failure is medically equivalent to "requiring physician intervention" as set forth in 4.02B(2). See ECF No. 12 at 8 ("[T]he record documents acute congestive heart failure demonstrated by the need for constant intervention in the form of a LifeVest followed by ICD implantation."); id. ("[T]he reason [the record does not demonstrate three separate episodes of acute congestive heart failure] is because . . . Plaintiff was prescribed a LifeVest and portable defibrillator, and ultimately an implantable defibrillator, information which more than fairly raises the issue of whether his condition is at least medically equivalent to requiring physician intervention, as set forth in the criteria of Listing 4.02B(2)."). Plaintiff argues that the ALJ ignored this evidence in concluding Plaintiff did not meet or equal any part of Listing 4.00. [ECF No. 12, 17].

      This argument is unpersuasive. As an initial matter, the ALJ was aware of Plaintiff's defibrillator use and did not ignore it in her analysis. To the contrary, the ALJ found Plaintiff's "ventricular tachycardia *with defibrillator*" to be an additional severe impairment and specifically stated that she considered Plaintiff's "ventricular tachycardia with defibrillator" when determining that the medical evidence did not demonstrate a level of severity consistent with any requirements set forth in Listing 4.00. [ECF No. 8-2, at 23-24]. The ALJ further referenced Plaintiff's "ventricular tachycardia with defibrillator" in conducting her RFC analysis. Id. at 25. Many of the medical records specifically referenced by the ALJ also discuss Plaintiff's defibrillator use. See id. at 24-27 and exhibits cited therein. Moreover, Plaintiff does not provide any support for his assertion that the evidence would demonstrate three separate episodes of acute congestive heart failure but for his LifeVest and AICD or that his defibrillator use is somehow equivalent to the "acute extended physician intervention" contemplated by Listing 4.02B. If anything, the absence of acute episodes of heart failure with defibrillator use suggests that Plaintiff's condition was controlled

with treatment, not that the defibrillator use was of equal medical significance to the listing criteria.[3]

For all of these reasons, substantial evidence supports the ALJ's conclusions that, although limited, Plaintiff did not have an impairment equal to listing-level severity. Accordingly, I find no violation of Burnett, and remand is not warranted on this issue.

### III.    CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied.   An appropriate Order follows

---

[3] Plaintiff also cites to the ALJ's failure to discuss Plaintiff's ACC/AHA heart failure rating of "C". [ECF No. 12, at 9 & n.6]. This argument likewise is of no moment. The ACC/AHA classification of heart failure has four stages, A-D. See https://www.healio.com/cardiology/learn-the-heart/cardiology-review/topic-reviews/accaha-heart-failure-classification. "Stage C" applies to patients "who have developed clinical heart failure." Id. There is no dispute here, however, that Plaintiff has clinical heart failure, and the ALJ fully acknowledged Plaintiff's congestive heart failure throughout her opinion. Moreover, a mere diagnosis is not sufficient to establish that a claimant's impairment causes functional limitations of listing-level severity. Further, as set forth above, the ALJ accepted Plaintiff's similar NYHA class III designation. Plaintiff attempts to distinguish the ACC/AHA classifications from the NYHA system by noting that, unlike the NYHA functional classification system, there is no moving backward to prior stages under the ACC/AHA system. [ECF No. 12, at 9 n.5]. This is a distinction without a difference in this case, however, because, as set forth above, the ALJ credited the more-severe NYHA class III findings for purposes of the disability analysis.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John William Pletcher, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.  2:19-887 |
| ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| AMBROSE, Senior District Judge ) | |

**ORDER OF COURT**

AND NOW, this 27th day of May, 2020, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment [ECF No. 13] is GRANTED and Plaintiff's Motion for Summary Judgment [ECF No. 11] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge